EVANDER, J.
The Department of Children and Families (DCF) seeks certiorari review of an order involuntarily committing Steven Bronson, a criminal defendant, to the custody of DCF pursuant to section 394.467, Florida Statutes (2011). Because the trial court failed to comply with the procedural requirements set forth in that statute, we grant the petition.
*200 On December 29, 2010, Bronson was arrested for, and charged with, the 1979 murder of Norma Page. After being appointed to represent Bronson, the Public Defender’s Office retained Drs. Frumkin and Danziger to evaluate Bronson’s psychiatric functioning for the purpose of determining whether he was competent to proceed in his criminal case. In his report, Dr. Frumkin concluded that “[i]t is questionable if Mr. Bronson meets the criteria for competency to proceed with adjudication.” Dr. Danziger was more definitive, opining that “this defendant is not competent to proceed.”
When the issue of Bronson’s competency was raised with the trial court, it appointed Drs. Tressler and Prichard to perform competency evaluations of the defendant. After performing his evaluation, Dr. Tres-sler found Bronson to be “a demented 63 year-old individual” with “severe brain damage” as a result of a series of strokes suffered in 2003. Dr. Tressler believed that Bronson was incompetent to proceed, and that his competency could not be restored. Dr. Prichard’s opinion differed to some degree. He found that Bronson had a cognitive disorder related to his prior strokes and that he was “marginally incompetent to proceed.” Dr. Prichard also opined that the prospect for competency restoration was “guarded.” However, Dr. Prichard agreed that neurological issues associated with Bronson’s 2003 strokes were “likely permanent and irreversible.”
After considering the reports of the four above-referenced doctors, the trial court entered an order on June 24, 2011, adjudging Bronson incompetent to proceed and committing him to DCF’s custody. In its order, the trial court found that Bronson “met the criteria for commitment to a treatment facility of the Department of Children and Families as provided in F.S. 916.13(1).” That subsection provides:
(1) Every defendant who is charged with a felony and who is adjudicated incompetent to proceed may be involuntarily committed for treatment upon a finding by the court of clear and convincing evidence that:
(a) The defendant has a mental illness and because of the mental illness:
1. The defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, the defendant is likely to suffer from neglect or refuse to care for herself or himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant’s well-being; or
2. There is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on herself or himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;
(b) All available, less restrictive treatment alternatives, including treatment in community residential facilities or community inpatient or outpatient settings, which would offer an opportunity for improvement of the defendant’s condition have been judged to be inappropriate; and
(c) There is a substantial probability that the mental illness causing the defendant’s incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future.
(Emphasis added).
Shortly thereafter, DCF filed a motion to intervene and a motion to vacate the trial court’s June 24, 2011 order. In its motion, DCF argued that the involuntary commitment of Bronson to DCF’s custody was improper for two reasons. First, Bronson’s incompetence to proceed was *201 not restorable in the foreseeable future. See, e.g., Dep’t of Children & Families v. Wehrwein, 942 So.2d 947 (Fla. 5th DCA 2006) (trial court’s order committing defendant, who had previously been adjudicated incompetent to proceed to trial, to DCF’s custody violated statute governing involuntary commitment of a defendant who had been adjudicated incompetent, where overwhelming evidence was that mental illness causing defendant’s incompetency would not respond to treatment and that it was highly unlikely defendant would ever respond to treatment). Second, the reports of the expert evaluators demonstrated that Bronson’s incompetence to proceed was the result of organic brain damage, not mental illness, and by its express language, section 916.13(1) was only applicable to defendants suffering from mental illness.
On July 13, 2011, the trial court entered an order granting DCF’s motion to intervene and vacating its June 24, 2011 order.
On August 2, 2011, the trial court entered an order for involuntary examination pursuant to section 394.463.[1] In compliance with the court order, Dr. Speiser of Park Place Behavioral Health Care conducted a psychiatric evaluation of Bronson. Dr. Speiser then prepared a report in which he concluded that Bronson did not meet the criteria for inpatient psychiatric hospitalization and instead recommended that Bronson “continue in treatment in the Department of Corrections with eventual nursing home placement due to his medical problems.”
On September 26, 2011, Bronson moved to dismiss his criminal charge (without prejudice) due to his incompetence. The State filed a written response arguing that dismissal would be improper and suggested that Bronson met the criteria for civil commitment under section 394.467(1).
On October 6, 2011, DCF filed a written response to the State’s request to civilly commit Bronson in which it argued that Bronson did not meet the criteria for involuntary placement under section 394.467(1) because: (1) he was not “mentally ill”; and (2) there were less restrictive treatment alternatives to provide for his care, i.e., proper placement in a nursing home. More importantly, DCF observed the lack of compliance with the procedural requirements set forth in section 394.467.
Notwithstanding DCF’s objection, on October 10, 2011, the trial court entered an order involuntarily committing Bronson to DCF’s custody.
Certiorari jurisdiction lies to review DCF’s claim that the trial court acted in excess of its jurisdiction by ordering DCF to undertake responsibility beyond what is required by statute. See Dep’t of Children & Family Servs. v. Amaya, 10 *202 So.3d 152, 154 (Fla. 4th DCA 2009); Wehrwein. We conclude that the trial court’s order constituted a departure from the essential requirements of law. As DCF contends, and as the State and Bronson concede, the trial court did not follow the multi-step process established in section 394.467. The procedural deficiencies included, but were not limited to:
1. The lack of a petition for involuntary inpatient placement;
2. The lack of any showing that a psychiatrist had examined Bronson within the preceding 72 hours and found that the criteria for involuntary inpatient placement had been met; and
3. The lack of an evidentiary hearing.
Furthermore, given the lack of an eviden-tiary hearing, it is clear that the trial court’s October 10, 2011 order involuntarily committing Bronson to DCF’s custody was not supported by clear and convincing evidence.
PETITION FOR WRIT OF CERTIO-RARI GRANTED; ORDER QUASHED.
LAWSON and JACOBUS, JJ., concur.

. Section 394.463 authorizes a trial court to enter an ex parte order for the involuntary examination of an individual where there is reason to believe, based on sworn testimony, that the individual has a mental illness and because of his or her mental illness:
(a)l. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
2. The person is unable to determine for himself or herself whether examination is necessary; and
(b) 1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.